IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

RODNEY BRAZELTON,

    Plaintiff,

v.

WELLPATH, LLC; CHRIS WATKINS; SUSAN BROBSTON; SALLY FOLEY; SHAMAILA GORSI; CARRIE JOANNE ROE; JANA HUSTON; PATRICIA RICE; ERIN O'MALLEY; SUSAN GILLES; EMILY DAWSON; LISA STOUT; MICHELLE NEWMAN; MORGAN RENEE ABRAHAM; PATRICIA EDDLEMON; BRITTANY VANFLEET; DEANDRA SNODDY, and PEORIA COUNTY,

    Defendants.

Case No. 1:22-cv-01324

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Rodney Brazelton, by and through counsel, complains against Defendants Wellpath, LLC, Chris Watkins, Susan Brobston, Sally Foley, Shamaila Gorsi, Carrie Joanne Roe, Jana Huston, Patricia Rice, Erin O'Malley, Susan Gilles, Emily Dawson, Lisa Stout, Michelle Newman, Morgan Renee Abraham, Patricia Eddlemon, Brittany Vanfleet, Deandra Snoddy, and Peoria County (together, "Defendants") as follows:

### Introduction

1.    In the early morning hours of September 11, 2020, Plaintiff Rodney Brazelton entered Peoria County Jail as a pretrial detainee. He reported a history of hypertension, which was controlled by antihypertensive medication.

2. At the time of his intake, Mr. Brazelton had a blood pressure of 183/115, which indicated a medical emergency. Rather than provide him the emergency care that he needed, Defendants simply sent Mr. Brazelton back to a cell within the general population of the Jail.

3. He remained there for 12 days without medication or medical attention. He tried as best he could to get medical attention and/or medication for his hypertension. But Defendants ignored him.

4. On September 23, Mr. Brazelton suffered a stroke—a well-known consequence of untreated emergent hypertension.

5. Mr. Brazelton's stroke was preventable had Defendants not failed to take objectively reasonable steps to treat his hypertensive emergency, or otherwise provide him with adequate medical care. As a result of Defendants' unconstitutional conduct, Mr. Brazelton has suffered both physical and emotional injuries that persist to this day.

6. Plaintiff accordingly brings this 42 U.S.C. § 1983 action to vindicate the constitutional rights that were violated by Defendants' unconstitutional and unlawful conduct.

## Jurisdiction and Venue

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

8.     Venue is proper under 28 U.S.C. § 1391(b). On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

**Parties**

9.     During the time alleged in this Complaint, Plaintiff Rodney Brazelton was a detainee at the Peoria County Jail. Mr. Brazelton now resides in Chicago, Illinois.

10.    Defendant Wellpath, LLC (Wellpath) is a corporation headquartered in Tennessee doing business in Illinois. Wellpath, pursuant to contract, was at all times relevant to this Complaint responsible for providing medical care to detainees at the Peoria County Jail, including Mr. Brazelton. Pursuant to that contract, the Peoria County Sheriff's Department delegated to Wellpath final policymaking authority over policies, practices, and procedures regarding the provision of medical care to detainees at the Jail.

11.    Defendant Chris Watkins is the current Sheriff of Peoria County. He is sued here in his official capacity as Sheriff. The Peoria County Sheriff's Department is responsible for the operation of the Peoria County Jail, which houses federal and state detainees.

12.    Defendant Shamaila Gorsi was at all times relevant to the Complaint a physician employed by Wellpath to treat patients at the Peoria County Jail. Dr. Gorsi is sued here in her individual capacity. At all times relevant to the events at issue in this case, Dr. Gorsi was acting under color of law and within the scope of

her employment with Wellpath.

13. Defendants Jana Huston, Carrie Joanne Roe, and Patricia Rice were at all times relevant to the Complaint nurse practitioners employed by Wellpath to treat patients at the Peoria County Jail. Defendants Huston, Roe, and Rice are sued here in their individual capacities. At all times relevant to the events at issue in this case, Defendants Huston, Roe, and Rice were acting under color of law and within the scope of their employment with Wellpath.

14. Defendants Gorsi, Huston, Roe, and Rice shall be referred to in this Complaint as the Provider Defendants.

15. Defendant Sally Foley was at all times relevant to the Complaint the health services administrator at the Peoria County Jail. Defendants Susan Brobston, Erin O'Malley, Susan Gilles, Emily Dawson, Lisa Stout, Michelle Newman, Morgan Renee Abraham, Patricia Eddlemon, Brittany Vanfleet, and Deandra Snoddy were at all times relevant to the Complaint nurses employed by Wellpath to treat patients at the Peoria County Jail.

16. Defendants Foley, Brobston, O'Malley, Gilles, Dawson, Stout, Newman, Abraham, Eddlemon, Vanfleet, and Snoddy shall be referred to in this Complaint as the Nursing Defendants.

17. The Nursing Defendants are each sued here in their individual capacities. At all times relevant to the events at issue in this case, the Nursing Defendants were acting under color of law and within the scope of their employment with Wellpath.

4

## Allegations

18.     On September 10, 2020, Mr. Brazelton was brought to the Peoria County Jail shortly after being arrested.

19.     In the early morning hours of September 11, Defendant Nurse Brobston performed Mr. Brazelton's medical intake assessment. Mr. Brazelton reported to Nurse Brobston that he suffered from hypertension, and that he was taking Hydrochlorothiazide, a diuretic prescribed to treat hypertension and designed to prevent strokes, heart attacks, and kidney problems.

20.     Nurse Brobston also learned during the intake assessment that Mr. Brazelton had previously been detained at the Peoria County Jail in the fall of 2019. Electronic medical records from that period of detention reflected that staff at the Jail had prescribed Hydrochlorothiazide to Mr. Brazelton, as well as another antihypertensive and a calcium channel blocker designed to treat high blood pressure.

21.     During the September 2020 intake assessment, Nurse Brobston also took Mr. Brazelton's blood pressure and noted that it was 183/115. Even standing alone and without the benefit of any prior medical records, a blood pressure of 183/115 reflects a hypertensive crisis and indicated that Mr. Brazelton was currently suffering a medical emergency.

22.     But Nurse Brobston did not take any action in response to learning Mr. Brazelton was suffering a hypertensive crisis. She did not send Mr. Brazelton to a hospital or emergency department, and she did not notify a physician or other

provider, who could prescribe essential medication or take any other action, of Mr. Brazelton's condition. Instead, she simply recommended that Mr. Brazelton be housed within the general population at the jail, entirely unmedicated and entirely untreated.

23. In the alternative, Nurse Brobston *did* contact one or more of the Provider Defendants—including Dr. Gorsi, and Nurse Practitioners Roe, Rice, and Huston—to report the results of Mr. Brazelton's intake assessment. Despite learning of Mr. Brazelton's report of hypertension (for which he took medication) and that Mr. Brazelton's blood pressure indicated a hypertensive crisis, one or more of the Provider Defendants took no action to send Mr. Brazelton to a hospital or emergency department, or to otherwise ensure that Mr. Brazelton received medical attention from a provider. They further took no action to ensure that Mr. Brazelton immediately received antihypertensive medications or to have his blood pressure closely monitored.

24. After the encounter with Nurse Brobston, Mr. Brazelton was sent to a quarantine unit within the Peoria County Jail. On information and belief, Mr. Brazelton's assignment was not based on his hypertensive crisis, but instead based on the Jail's policy to quarantine all new detainees for a period of time due to the risks of COVID-19.

25. Mr. Brazelton continued not to receive any medications. In the days that followed his intake assessment, one or more of the Nursing Defendants— including Nurses Brobston, Foley, O'Malley, Gilles, Dawson, Stout, Newman,

6

Abraham, Eddlemon, Vanfleet, and Snoddy—came into Mr. Brazelton's housing unit. Mr. Brazelton reported that he had hypertension and needed medications, and he requested medical attention. None of the Nursing Defendants took any action to schedule Mr. Brazelton to be seen by a physician or other provider, or otherwise ensure that Mr. Brazelton received appropriate medical attention. To the contrary, the Nursing Defendants who encountered Mr. Brazelton simply disregarded his medical complaints.

26. In the alternative, one or more of the Nursing Defendants *did* refer Mr. Brazelton's requests for medical attention to one or more of the Provider Defendants, but none of them took any action to schedule Mr. Brazelton for an evaluation or otherwise ensure that Mr. Brazelton received the necessary medical attention.

27. Mr. Brazelton also submitted written requests for medical attention through an electronic kiosk located within the housing unit. These requests, too, were ignored by Defendants.

28. Between September 11 and September 23, Mr. Brazelton received no medical attention. He received no medication. He was not monitored, and no one bothered to check his blood pressure or otherwise respond to his requests for medical attention.

29. High blood pressure that is left untreated can cause strokes and heart attacks, among other serious medical issues.

30. On the morning of September 23, Mr. Brazelton suffered a stroke. At the time of his stroke, he had been detained at the Jail without any medication for 12 days.

31. That morning, Mr. Brazelton again saw Nurse Brobston, who noted that Mr. Brazelton had one-sided weakness, slurred speech, and could not walk on his own. Despite recognizing that Mr. Brazelton's symptoms were "stroke-like," Nurse Brobston still did not call 911. Instead, she called Defendant Nurse Foley, who came to assess Mr. Brazelton.

32. Mr. Brazelton was finally transported to the nearby hospital at approximately 11 a.m. on September 23. Staff at the hospital immediately recognized that Mr. Brazelton was suffering a stroke and a hypertensive emergency.

33. Mr. Brazelton remained at the hospital until approximately September 30. Mr. Brazelton was discharged with a list of prescribed medications. Staff at the hospital also included referrals for physical therapy, occupational therapy, and speech language pathology for an evaluation and treatment.

34. On September 30, Defendant Nurse O'Malley spoke with Defendant Nurse Practitioner Roe, who authorized and re-prescribed some, but not all, of the medications that hospital staff had prescribed for Mr. Brazelton. Mr. Brazelton did not receive a referral for a physical therapy, occupational therapy, and speech language pathology evaluation or treatment at any point during his detention at the Peoria County Jail.

## COUNT I
### 42 U.S.C. § 1983 – Failure to Provide Medical Care
### All Individual Defendants

35. Each of the Paragraphs of this Complaint is incorporated herein.

36. At all times relevant to this Complaint, Mr. Brazelton suffered from an objectively serious medical condition.

37. In the manner described more fully above, the Individual Defendants undertook the decision to act or not to act purposefully, knowingly, and/or recklessly.

38. In the manner described more fully above, the Individual Defendants' action and/or inaction was objectively unreasonable, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.

39. As a result of Defendants' unconstitutional and unlawful misconduct, Mr. Brazelton suffered injuries, and continues to suffer injuries, including but not limited to pain, impairment with daily function, suffering, and emotional distress.

## COUNT II
### 42 U.S.C. § 1983 – Failure to Intervene
### All Individual Defendants

40. Each of the Paragraphs of this Complaint is incorporated herein.

41. At all times relevant to this Complaint, Mr. Brazelton suffered from an objectively serious medical condition.

42. In the manner described more fully above, each of the Individual Defendants had a reasonable opportunity to prevent the violation of Mr. Brazelton's

constitutional rights as set forth elsewhere in this Complaint had they been so inclined but failed to do so.

43. Defendants' failures to act were intentional, knowing, and/or done with reckless indifference to Mr. Brazelton's rights.

44. As a result of Defendants' unconstitutional and unlawful failure to intervene, Mr. Brazelton suffered injuries, and continues to suffer injuries, including but not limited to pain, impairment with daily function, suffering, and emotional distress.

## COUNT III
### 42 U.S.C. § 1983 – *Monell* Claims
### Defendants Wellpath and Chris Watkins

45. Each of the Paragraphs of this Complaint is incorporated herein.

46. The violations of Mr. Brazelton's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and the injuries that he suffered and continues to suffer as a result, were proximately caused by the policies and practices of Wellpath and the Peoria County Sheriff's Department.

47. At all times relevant to the events at issue in this case, Defendant Wellpath contracted to provide medical care to men and women detained in the Peoria County Jail, including Mr. Brazelton. Pursuant to that contract, the Peoria County Sheriff's Department delegated to Wellpath final policymaking authority over policies, practices, and procedures regarding the provision of medical care to detainees at the Peoria County Jail.

48. Prior to the events giving rise to Plaintiff's Complaint, Defendant Wellpath had notice of policies and practices by medical staff at the Peoria County Jail pursuant to which medical staff failed to conduct meaningfully adequate intake assessments, failed to respond appropriately to emergent or urgent issues presented during intake assessments, failed to provide assessments and/or prescriptions for people who required medication to manage serious medical conditions that posed a substantial risk of harm if left untreated, failed to meaningfully respond to detainees' requests for medications or medical attention, and prohibited certain medical staff from contacting emergency medical services (e.g., calling 911), even when such contact was emergently necessary, among others.

49. These policies and practices put in place by Defendants Wellpath and Watkins (in his official capacity as Sheriff of Peoria County) directly encouraged the very type of misconduct at issue in this case. Further, these policies and practices flourished because Defendants Wellpath and Watkins failed to provide adequate training and supervision of medical staff and failed to adequately punish and discipline prior instances of misconduct. In this way, Wellpath and the Peoria County Sheriff's Department violated Mr. Brazelton's constitutional rights by maintaining policies and practices that were the moving force driving the violation.

50. The above-described policies and practices were able to exist and thrive because Defendants Wellpath and Watkins (in his official capacity as Sheriff of Peoria County) were deliberately indifferent to the problem.

51. Mr. Brazelton's injuries were caused by employees of Wellpath and/or the Peoria County Sheriff's Department, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in misconduct.

## COUNT IV
### Negligence (State Law)
### All Defendants

52. Each of the Paragraphs of this Complaint is incorporated herein.

53. In the manner described more fully above, Defendants breached the duty of care owed to detainees in their care.

54. Alternatively, Defendants were grossly negligent or willful and wanton in committing the misconduct described above in that they demonstrated an utter indifference to the health or safety of others. Defendants were aware that an injury would probably result from the above-described course of action/inaction and recklessly disregarded the consequences of those actions/inactions.

55. Defendants' actions were undertaken with gross negligence and/or willfully and wantonly and/or with reckless indifference or conscious disregard for Mr. Brazelton's health or safety.

56. As a direct and proximate result of Defendants' misconduct, Mr. Brazelton suffered injuries, and continues to suffer injuries, including but not limited to pain, impairment with daily function, suffering, and emotional distress.

## COUNT V
## Respondeat Superior
## Defendant Wellpath

57.  Each of the Paragraphs of this Complaint is incorporated herein.

58.  In committing the acts alleged in the preceding paragraphs, the above-described Defendants were employees, members, and/or agents of Wellpath, acting at all relevant times within the scope of their employment.

59.  Similarly, other unnamed Defendants, also employees, members, and/or agents of Wellpath, and acting within the scope of their employment, committed the same or similar misconduct to that described above.

60.  Consequently, Defendant Wellpath is liable for the actions of its employees acting within the scope of their employment under state law.

61.  Defendant Wellpath, as a for-profit, private corporation acting under color of state law, should additionally be held liable under 42 U.S.C. § 1983 for the conduct of its employees acting within the scope of their employment. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 793-75 (7th Cir. 2014).[1]

62.  As a direct and proximate result of Defendant Wellpath's misconduct, Mr. Brazelton suffered injuries and continues to suffer injuries, including pain, suffering, and emotional distress.

---

[1] Plaintiff recognizes that pursuant to Seventh Circuit precedent, such a claim for *respondeat superior* liability under § 1983 is currently unavailable. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Plaintiff accordingly pleads this claim for the purpose of preserving it before the appellate court. *See Shields*, 746 F.3d at 792.

## COUNT VI
## Indemnification (State Law)
## Defendant Peoria County

63. Each of the Paragraphs of this Complaint is incorporated herein.

64. During all times relevant to this Complaint, Defendants and other employees, members, and/or agents of Wellpath, as well as Defendant Watkins (in his official capacity as Sheriff of Peoria County), acted within the scope of their employment in committing violations of state and federal law.

65. Illinois law requires public entities to pay any tort judgment for damages for which county employees are liable within the scope of their employment activities.

66. Defendant Peoria County is obligated to pay any judgment entered against the Sheriff in an official capacity.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Rodney Brazelton, hereby respectfully requests that this Court enter a judgment in his favor and against Defendants Wellpath, LLC, Chris Watkins, Susan Brobston, Sally Foley, Shamaila Gorsi, Carrie Joanne Roe, Jana Huston, Patricia Rice, Erin O'Malley, Susan Gilles, Emily Dawson, Lisa Stout, Michelle Newman, Morgan Renee Abraham, Patricia Eddlemon, Brittany Vanfleet, Deandra Snoddy, and Peoria County, awarding compensatory damages, punitive damages, declaratory relief, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 20, 2022

> Respectfully Submitted,
>
> /s/ Sarah Grady
> Sarah Grady
> Attorney for Plaintiff

Sarah Grady
Howard Kaplan
KAPLAN & GRADY LLC
1953 North Clybourn Ave., Ste. 274
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com
howard@kaplangrady.com