## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

RODNEY BRAZELTON,

       Plaintiff,

      v.

WELLPATH, LLC, et al.,

       Defendants.

Case No. 22-cv-1324-SEM-KLM

### PLAINTIFF'S RESPONSE TO DEFENDANT WELLPATH'S MOTION TO DISMISS OR STRIKE PARAGRAPH 61 OF PLAINTIFF'S COMPLAINT

Plaintiff Rodney Brazelton hereby respectfully responds to the Motion to Dismiss or Strike Paragraph 61 of Plaintiff's Complaint filed by Defendant Wellpath, LLC ("Wellpath") (Dkts. 32, 33), stating as follows:

### INTRODUCTION

This case concerns Defendants' failure to provide Plaintiff Rodney Brazelton medical care while he was a pretrial detainee at the Peoria County Jail ("Jail"). Despite repeatedly and persistently informing medical staff that he suffered from hypertension, Mr. Brazelton received no medical attention. Medical staff failed to monitor him, provide him medication, or even perform consistent checks of his blood pressure. These colossal failures resulted in Mr. Brazelton suffering a stroke.

Defendant Wellpath now moves to dismiss part of Mr. Brazelton's *respondeat superior* claim (Count V, Para. 61) against Wellpath under 42 U.S.C. § 1983. Notably, Wellpath does not seek dismissal of the claim insofar as it asserts *respondeat superior* liability against Wellpath for Plaintiff's state-law claims.

Defendants' Motion should be denied. While current Seventh Circuit precedent forecloses Plaintiff's *respondeat superior* claim under § 1983, the text and legislative history of the statute support such liability against for-profit corporations like Wellpath. Accordingly, even if the Court grants partial dismissal, Mr. Brazelton preserves the claim for appeal to the Seventh Circuit.

## BACKGROUND

On the morning of September 11, 2020, Plaintiff Rodney Brazelton entered the Jail as a pretrial detainee. Dkt. 1 ("Compl.") ¶¶ 1, 18. The next day, Defendant Nurse Susan Brobston performed Mr. Brazelton's medical intake assessment. During that assessment, Mr. Brazelton reported to Defendant Brobston that he had a history of hypertension and that he was taking Hydrochlorothiazide, a medication prescribed to treat hypertension and prevent strokes, heart attacks, and kidney problems. *Id.* ¶ 19. During intake, Defendant Brobston also learned that Mr. Brazelton had previously been detained at the Jail in 2019; electronic medical records showed that during the prior stint at the Jail, he had been prescribed Hydrochlorothiazide, the same medication that Mr. Brazelton stated he was taking, as well as other medications designed to treat high blood pressure. *Id.* ¶ 20. Defendant Brobston also took Mr. Brazelton's blood pressure during his September 2020 intake assessment. *Id.* Mr. Brazelton's blood pressure measured 183/115, numbers reflecting a hypertensive crisis and medical emergency requiring urgent intervention. *Id.* ¶ 21.

Despite these alarm bells, Defendant Brobston took no action. Rather than sending Mr. Brazelton to a hospital or emergency department and/or notifying a physician or provider,

Defendant Brobston simply recommended that Mr. Brazelton be housed with the general population at the Jail, unmedicated and untreated.[1] *Id.* ¶ 22.

Mr. Brazelton was sent to a COVID-19 quarantine unit. *Id.* ¶ 24. During this time, Mr. Brazelton still received no medication. In the days following his intake assessment, one or more of the Nursing Defendants—including Defendants Brobston,[2] Sally Foley, Erin O'Malley, Emily Dawson, Lisa Stout, Michelle Newman, Morgan Abraham, Patricia Eddlemon, Brittany Vanfleet, and/or Deandra Snoddy—came to Mr. Brazelton's housing unit, where he again reported having hypertension and requested medical attention. The Nursing Defendants took no action to schedule Mr. Brazelton to be seen by a physician or other provider, or otherwise ensure that Mr. Brazelton received appropriate medical attention.[3]

Mr. Brazelton also submitted written requests for medical attention through an electronic kiosk located within the housing unit. *Id.* ¶ 27. These requests for medical attention were also disregarded. *Id.*

On September 23, 2020, Mr. Brazelton suffered a stroke. *Id.* ¶ 30. By this time, he had been detained at the Jail without any hypertensive treatment or medication for 12 days. *Id.* ¶¶ 28–30.

---

[1] Alternatively, Defendant Brobston *did* contact one or more of the Provider Defendants—including Dr. Shamalia Gorsi, Nurse Practitioners Carrie Roe, Patricia Rice, and/or Jana Huston—to report the results of Mr. Brazelton's intake assessment. *Id.* ¶ 23. But despite being informed of his conditions and status, the Provider Defendants took no action to ensure Mr. Brazelton received necessary medical attention.

[2] Plaintiff's Complaint includes Nurse Gilles' name in this list of Nursing Defendants. Since filing, counsel for Plaintiff has been informed by Counsel for the Wellpath Defendants that Nurse Gilles is the same person as Nurse Brobston.

[3] Alternatively, one or more of the Nursing Defendants *did* refer Mr. Brazelton's requests for medical attention to one or more of the Provider Defendants, but none took any action to schedule him for an evaluation or otherwise ensure Mr. Brazelton received necessary medical attention. *Id.* ¶ 26.

That morning, Mr. Brazelton again saw Defendant Brobston. She recognized Mr. Brazelton had "stroke-like" symptoms—Mr. Brazelton was weak on one side of his body, had slurred speech, and could not walk on his own—yet Defendant Brobston failed to call 911. *Id.* ¶ 31. Instead, she called Defendant Foley to assess him further. *Id*. ¶ 31.

Later that morning, Mr. Brazelton was finally transported to a nearby hospital. *Id.* ¶ 32. Hospital staff immediately recognized Mr. Brazelton was suffering from a stroke and a hypertensive emergency. *Id*. He remained at the hospital for about a week. *Id.* ¶ 33. The hospital discharged Mr. Brazelton with a list of prescribed medications along with referrals for physical therapy, occupational therapy, and speech language pathology. *Id*.

The day Mr. Brazelton was discharged from the hospital, Defendant O'Malley spoke with Defendant Roe, who only authorized prescription of *some* of the medications that hospital staff had prescribed for Mr. Brazelton. *Id.* ¶ 34. Further, Mr. Brazelton did not receive a referral for physical therapy, occupational therapy, and/or speech language pathology evaluation or treatment while at the Jail. *Id*.

## LEGAL STANDARD

Dismissal for failure to state a claim under Rule 12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Virnich v. Vorwald,* 664 F. 3d 206, 212 (7th Cir. 2011). In deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences" in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F. 3d 272, 275 (7th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4

*NewSpin Sports, LLC v. Arrow Elecs., Inc.,* 910 F. 3d 293, 299 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

Count V of Plaintiff's complaint alleges *respondeat superior* liability against Wellpath for Plaintiff's state-law and section 1983 claims. Compl. ¶¶ 57–62. Wellpath seeks dismissal of that claim insofar as it alleges *respondeat superior* liability for Plaintiff's section 1983 claims.[4] *See* Dkt. 32 at 2; Dkt. 33 at 2–3. "Under *respondeat superior*, an employer may be held liable for the negligent, willful, malicious or even criminal acts of its employees when those acts are committed within the scope of [the employee's] employment." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 697 (7th Cir. 2013) (alteration in original) (quoting *Adames v. Sheahan*, 909 N.E.2d 742, 754–55 (Ill. 2009)).

Wellpath argues that the doctrine of *respondeat superior* cannot apply to Wellpath, and that the corporation should instead benefit from the more stringent standard of liability that the Supreme Court has imposed for public municipalities under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). But the Supreme Court has never extended its holding in *Monell* to private corporations like Wellpath. And although the Seventh Circuit has required plaintiffs to meet the standard of liability discussed in *Monell* to prevail on section 1983 claims against corporations like Wellpath, *see Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982), it has also noted that it is high time to revisit this issue. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

---

[4] Though framed, in part, as a motion to strike, Wellpath does not invoke Rule 12(f) anywhere in its Motion or explain why the paragraph at issue in Plaintiff's Complaint (Para. 61) meets the requirements for a motion to strike.

In *Shields*, the Seventh Circuit cautioned that courts "should not insulate employers from *respondeat superior* liability under § 1983 without powerful reasons to do so." 746 F.3d at 792. The Circuit observed that the text and legislative history of section 1983 do not support the extension of *Monell* to private corporations and observed that "current Supreme Court precedent seems to support rather than reject *respondeat superior* liability for private corporations." *Id.* at 793. This outcome also tracks the distinction in qualified-immunity jurisprudence between public and private corporations. *See id.* at 793–94; *see also Petties v. Carter*, 836 F.3d 722, 734 (7th Cir. 2016) (en banc) ("[Q]ualified immunity does not apply to private medical personnel in prisons"). And the financial incentives for private corporations like Wellpath to "provide substandard care" weigh in favor of permitting *respondeat superior* liability against Wellpath for constitutional violations. *Shields*, 746 F.3d at 794.

Since *Shields*, the Circuit has not had an opportunity to revisit the question, though it has repeatedly signaled its readiness to do so, including in an en banc opinion. *See, e.g.*, *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) ("We questioned in *Shields* whether private corporations might also be subject to *respondeat superior* liability, unlike their public counterparts, but we have no need in the present case to address that question and thus we leave it for another day." (citation omitted)); *Gaston v. Ghosh*, 920 F.3d 493, 495 (7th Cir. 2019) (declining to consider a section 1983 *respondeat superior* claim against private medical provider because the plaintiff had failed to establish an underlying constitutional violation and thus, even applying *respondeat superior*, the claim would necessarily fail).

As such, although Plaintiff acknowledges that *Iskander*'s holding—that *Monell* applies to private corporations like Wellpath—is currently binding law in this Circuit, this case presents an

opportunity to revisit that precedent and recognize the availability of *respondeat superior* liability against private corporations, like Wellpath, for section 1983 claims.

Yet even if this Court applies *Iskander* to conclude that Plaintiff may not maintain his *respondeat superior* claim against Wellpath under section 1983, Wellpath concedes that *respondeat superior* liability remains viable as to Plaintiff's state-law claims against Wellpath, including Plaintiff's negligence claim (Count IV). *See* Compl. ¶¶ 52–62; Dkt. 33 at 3. As such, the Parties agree that even if Plaintiff may not pursue a section 1983 *respondeat superior* claim against Wellpath, Count V should not be dismissed as to Plaintiff's state-law claims.

## CONCLUSION

For the reasons set forth above, this Court should deny Defendant Wellpath's partial Motion to Dismiss or Strike Paragraph 61.


Respectfully submitted,

/s/ David Schmutzer
David Schmutzer
Attorney for Plaintiff


Sarah Grady
Howard Kaplan
David Schmutzer
KAPLAN & GRADY LLC
1953 N. Clybourn Ave., Suite 274
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com
howard@kaplangrady.com
david@kaplangrady.com

## <u>CERTIFICATE OF SERVICE</u>

I, David Schmutzer, an attorney, certify that January 3, 2022, I caused the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

<u>/s/ David Schmutzer</u>
David Schmutzer
Attorney for Plaintiff